# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

## PENSACOLA DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN, | § | |
| JEREMY GUY | § | |
| *Plaintiffs*, | § | CIVIL ACTION NO: |
| v. | § | 2022-CV-_____ |
| Austal USA, LLC, | § | Jury Trial Demanded |
| *Defendant*, | § | |
| | § | |

## PLAINTIFFS' COMPLAINT

COMES NOW, PLAINTIFFS, Richard Allen and Jeremy Guy, in the above-style and numbered cause of action, and files this Complaint ("Complaint"), on behalf of themselves, complaining of DEFENDANT, Austal USA, LLC, ("Defendant") and in support thereof would show unto this Honorable Court the following:

### I.    INTRODUCTION

1.    This is an action for legal and equitable relief to redress unlawful discrimination, harassment, retaliation and wrongful termination against the Plaintiffs for their refusal to allow an experimental Covid-19 vaccine to be injected into their bodies against their religious beliefs. This suit is brought to seek a declaratory judgment that Defendant has engaged in an unfounded pattern

1

and practice of religious discrimination in employment opportunities and to secure the protection for and to redress the deprivation of such rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Civil Rights Act of 1991, which provide for relief against discrimination and harassment in employment on the basis of religion and retaliation related thereto.  Specifically, Plaintiffs allege that Defendant has subjected them to a hostile work environment and wrongful termination based on their sincerely held religious beliefs.

2.        Rather than complying with its obligations under Title VII, Austal USA responded by informing the Plaintiffs that they would be effectively terminated if they didn't receive one of three experimental Covid-19 vaccines.

3.        Austal USA's actions left the Plaintiffs with the impossible choice of either taking one of the three experimental COVID-19 vaccines, at the expense of their religious beliefs and/or their health, or losing their livelihoods.  In doing so, Austal USA has violated Title VII of the Civil Rights Act of 1964 by failing to engage in the interactive process and providing reasonable accommodations to the Plaintiffs.

## II.        **PLAINTIFFS**

4.        Plaintiff Richard Allen is a Florida resident who currently resides in Pensacola, Florida, which is in Escambia County. Mr. Allen was a A-Class Fitout Tradesman who had worked for Austal USA since January 24th, 2014.  Mr. Allen was terminated by Austal USA on October 27th, 2021 after refusing to receive one of the three experimental Covid-19 vaccines and having his religious exemption denied.

5.        Plaintiff Jeremy Guy is a Florida resident who currently resides in Pensacola, Florida, which is in Escambia County. Mr. Guy was an A-Class Electrician who had worked for

Austal USA since June 15th, 2016.  Mr. Guy was terminated by Austal USA on October 27th, 2021 after refusing to receive one of the three experimental Covid-19 vaccines and having his religious exemption denied.

### III.   DEFENDANTS

6.     **Defendant, Austal USA, LLC,** ("Austal") is a domestic for-profit limited liability corporation with its headquarters in Mobile, Alabama.  Austal USA, LLC conducts business in the State of Alabama with its principal office located at 100 Austal Way, Mobile, Alabama, 36602.

### IV.   MISNOMER/ALTER EGO

7.     In the event any parties are misnamed or are not included herein, it is Plaintiffs' contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein.  Alternatively, Plaintiffs contend that any "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

### V.   JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5; and 42 U.S.C. §§ 12112, 12117(a), and 12203, which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by § 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981.

9.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and §2202.

10.     This case challenges Austal USA's decision to implement a COVID-19 vaccine mandate without also granting reasonable accommodations as required under Title VII of the Civil Rights Act of 1964.

11.     Moreover, Austal USA's actions are felt by the Plaintiffs in this District as they are residents of this District.  This Court is the proper venue to bring this action based on 28 U.S. Code §1332 regarding diversity of citizenship and amount in controversy being greater than $75,000.

## VI.   ADMINISTRATIVE PREREQUISITES

12.     Plaintiffs are pursuing their claims under Title VII of the Civil Rights act of 1964.

13.     Plaintiffs have met all the administrative conditions precedent for the filing of this action under Title VII.  Plaintiffs have timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Both plaintiffs have received a Right-To-Sue Notice and accordingly, Plaintiffs have brought forth this action within the 90-day time frame required under Federal Law.

### A.      The COVID-19 Pandemic and Vaccine Response

14.     By Spring of 2020, the novel coronavirus SARS-CoV-2, which can cause the COVID-19 disease, spread rapidly around the world impacting millions of individuals.

15.     At or around this same time, Austal USA began the process of implementing certain mitigation procedures for its workforce, including social distancing, masking and issuing proper hygiene instructions.

4

16.     Since that time, at least three separate COVID-19 vaccines have been developed and authorized for emergency use in the United States: Moderna, Pfizer-BioNTech, and Johnson & Johnson.  The Food and Drug Administration ("FDA") issued an Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 11th, 2020.  One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine.  Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

17.     On August 23, 2021, the FDA issued full approval for the Pfizer vaccine Comirnaty for individuals 16 years of age and older.  On January 31, 2022, the FDA announced the second approval of Moderna's COVID-19 vaccine that is marketed as Spikevax.  At this time, Johnson & Johnson's Janssen COVID-19 vaccine has yet to be FDA approved and licensed.

**B.     Executive Orders & Federal Contractor Guidance Response**

18.     On January 20, 2021, President Joseph Biden signed Executive Order 13991 ("EO 13991"), establishing the creation of the "Safe Federal Workforce Task Force" ("Task Force"), whose stated mission is to "provide ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic.  86 Fed. Reg. 7,045–48 (Jan. 20, 2021).

19.     On September 9, 2021, President Biden signed Executive Order 14042 ("EO 14042"), in which the President provided that his order would "promote economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID-19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument," which would "decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites

5

where they are performing work for the Federal Government." 86 Fed. Reg. 50,985–88 (Sept. 9, 2021).

20.     Furthermore, EO 14042 required that the Task Force provide, by September 24, 2021, guidance regarding "adequate COVID-19 safeguards," which were to be complied with by all entities, whether contractors or subcontractors, that had contracts with the federal government. *Id.* at 50, 985.  This executive order expressly stated that the Task Force's guidance on the matter would be mandatory at all "contractor or subcontractor workplace locations" so long as the Director of the "Office of Management and Budget" ("OMB") approved the agency's proposed guidance and determined that it would "promote economy and efficiency in Federal contracting." *Id.*  EO 14042 applies, with some limited exceptions, to "any new contract; new contract-like instrument; new solicitation for a contract or contract like instrument; extension or renewal of an existing contract or contract-like instrument; and exercise of an option on an existing contract or contract like instrument." *Id.*

21.     Weeks later on September 24, 2021, the Task Force issued its Guidance for Federal Contractors and Subcontractors pursuant to EO 14042.[1]  This newly issued guidance required that all "covered contractors"[2] be vaccinated by January 18, 2022,[3] unless they are "legally entitled to

---

[1] *See* Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, available at https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20 210922.pdf (last visited Dec. 23, 2021).

[2] "Covered contractor" means "a prime contractor or subcontractor at any tier who is party to a covered contract." Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, at p. 3.

[3] While the initial Task Force Guidance announced a deadline of December 8, 2021, on November 10, 2021, an updated version was issued which pushed the deadline for full vaccination to January 18, 2022. *See* Safer Federal Workforce Task Force, COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors (Updated November 10, 2021), available at https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer% 20Federal%20Workforce%20Task%20Force_20211110.pdf (last visited December 4, 2021). This means that

an accommodation."[4]   Additionally, the guidance is applicable to all "newly awarded covered contracts" at all locations where covered contract employees perform work, including covering "any full-time or part-time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace. *Id.* at 3–5.

22.    Four days later on September 28, 2021, the Director of the Office of Management and Budget (OMB) issued a notice of determination.  This notice stated that "compliance by federal contractors and subcontractors with the COVID-19 workplace safety protocols detail in the Task Force guidance will improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract."  86 Fed. Reg. 53,691–92.

23.    In an effort to implement the policies and requirements that have been established by the guidelines, EO 14042 directed the Federal Acquisition Regulatory Council ("FAR Council") to make particular amendments to the Federal Acquisition Regulation ("FAR"). Particularly, EO 14042 states that FAR must "provide for inclusion in Federal procurement solicitation and contractors subject to this order," which such compliance includes compliance of vaccination requirements. 86 Fed. Reg. 50,986.  The FAR is the set of procedures, policies, and rules that govern the drafting and implementation process of contracts for all executive agencies

---

covered contractors' employees would need to receive their Johnson & Johnson vaccine or the second dose of a Pfizer or Moderna vaccine by January 4 to be fully vaccinated by the deadline. *See* The White House, Fact Sheet: Biden Administration Announces Details of Two Major Vaccination Policies, https://www.whitehouse.gov/briefing-room/statementsreleases/2021/11/04/fact-sheet-bidenadministration-announces-details-of-two-major-vaccination-policies/ (last visited Dec. 4, 2021).
[4] Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* (Updated November 10, 2021), at p. 5.

in addition to providing procedures and policies for standard solicitation provisions and contract clauses.[5]

24.     On September 30, 2021, the FAR Council issued a memorandum that was sent to a myriad of executive agencies, providing direction on the implementation of the new guidance of the policies and procedures for federal contractors.[6]  This memorandum explicitly explains how EO 14042 directed the FAR council to "develop a contract clause" that prescribes requirements for contractors and subcontractors "to comply with [the Task Force Guidance] and to provide initial policy direction to acquisition offices for use of the clause by recommending that agencies exercise their authority under FAR subpart 1.4, Deviations from the FAR."[7]   The FAR memorandum also provides an attachment entitled "FAR Deviation clause" and it states, *inter alia*:

> (c) Compliance. The Contractor shall comply with all guidance, including guidance conveyed through Frequently Asked Questions, as amended during the performance of this contract, for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance) at https://www.saferfederalworkforce.gov/contractors/.

> (d) Subcontracts. The Contractor shall include the substance of this clause, including this paragraph (d), in subcontracts at any tier that exceed the simplified acquisition threshold, as defined in Federal Acquisition Regulation 2.101 on the date of subcontract award, and are for services, including construction, performed in whole or in part within the United States or its outlying areas

Id. at pp. 4–5.  Moreover, the FAR memo lists the solicitations that the agencies are "required to include" with implementation of the new clause; however, also providing that the goal being to

---

[5] *See* United States General Services Administration, Federal Acquisition Regulation, available at https://www.gsa.gov/policy-regulations/regulations/federal-acquisitionregulation-far (previously accessed Dec. 23, 2021) (website is down and/or removed as of May 6, 2022).

[6] *See* Far Council Guidance, available at https://www.whitehouse.gov/wp-content/uploads/2021/09/FAR-CouncilGuidance-on-Agency-Issuance-of-Deviations-to-Implement-EO-14042.pdf (last visited Dec. 4, Case 1:21-cv-00163-RSB-BKE Document 94 Filed 12/07/21 Page 5 of 28 6 2021).

[7] *Id.* at p. 2.

"get more people vaccinated and decrease the spread of COVID-19." *Id.* at p. 2.  As such, "the Task Force *strongly encourages* agencies to apply the requirements of its guidance broadly, consistent with applicable law, by including the clause in other types of contracts that are not otherwise covered by EO 14042. *Id.* at p. 3 (emphasis added).

### C.    Nationwide COVID-19 Litigation

25.    Austal's decision to terminate these employees is made based on interpretation of a law and guidance from federal agencies that have been held to be unconstitutional or possess a strong likelihood of unconstitutionality in a myriad of federal courts across the United States.  *See e.g.*, *Commonwealth of Kentucky v. Biden*, No. 3:21-cv-00055 (E.D. Ky. Nov. 30, 2021).

26.    On December 9, 2021, a Georgia federal district court judge issued a preliminary nationwide injunction that halted enforcement of President Biden's EO 14042 in the case, *Georgia v. Biden*. No. 1:21–CV–163 (S.D. Ga. Dec. 7, 2021).  The scope of this injunction is applicable to all federal contractors and subcontractors in all covered contracts in any state or territory of the United States.  This nationwide injunction on federal contractors is still in effect as of today.

27.    In wake of this decision, the Office of Management and Budget ("OMB") has issued guidance on implementing the requirements of EO 14042 while ensuring compliance with any relevant applicable court orders and injunctions, depending on the course of ongoing litigation. In cases involving existing contracts or contract-like instruments that contain a clause implementing EO 14042, the OMB prescribes that "[t]he Government will take *no action* to enforce the clause implementing requirements of Executive Order 14042, absent further written notice from the agency, where the place of performance identified in the contract is in a U.S. state

or outlying area subject to a court order prohibiting the application of requirements pursuant to the Executive Order."[8]

28.     On January 13, 2022, the United States Supreme Court struck down the private entity vaccine mandate advanced by President Biden that would have affected more than 84 million Americans, selected solely because the individuals work for entities that employ more than 100 employees.  Simultaneously, the Supreme court upheld a regulation issued by the Centers for Medicare and Medicaid Services that mandates vaccines for almost all employees at hospitals, nursing homes, and other health care providers that receive federal funds.

**D.     Austal's Vaccine Mandate**

29.     Austal is a federal contractor that has contracts or contract-like instruments with the United States federal government.  As such, the Supreme Court's healthcare and private entity ruling is inapplicable and the December 9, 2021, nationwide injunction on federal contractors prescribing COVID-19 vaccine mandates is applicable.

30.     In response to the September 9th, 2021 Executive Order 14042, Austal USA implemented the following vaccine policy to all of its' employees on October 9th by sending out the following communication.  This communication read, in part:

"All Austal USA Employees must receive and report receipt of the Johnson & Johnson vaccine or their first shot of the Pfizer or Moderna vaccine by Oct. 27th, and second doses of the Pfizer or Moderna vaccine by Nov. 24th.  Any additional vaccinations authorized

---

[8] *See* Safer Federal Workforce, *For Federal Contractors*, available at
https://www.saferfederalworkforce.gov/contractors/ (last visited May 6, 2022) (emphasis added).

and recommended by the CDC may be considered as authorized by Austal's Health,

Safety & Environmental Department."

After laying out the schedule and instructions for emailing proof of vaccination, the

communication went on to state:

"An employee with a disability, who is pregnant, who is a nursing mother, who has a

qualifying medical condition that contraindicates vaccination, or who objects to being

vaccinated on the basis of a sincerely held religious belief/practice, can request an

exemption/accommodation through human resources.  Detailed information on how to

request an exemption/accommodation will be provided next week.  Approval of

exemptions/accommodations will be subject to specific legal requirements.  Notification

will be given to the employees if the requirements are not met or cannot be

accommodated."

31.     After the Plaintiffs had submitted religious exemptions within the time frame

allotted, and in the format prescribed by Austal USA or prescribed by the Civil Rights Act of

1964, over 200 Austal Employees, including the Plaintiffs, who had not yet taken one of the

experimental vaccines, were rounded up on Friday, October 22nd, 2021, put in a room, told to put

their phones away and to not record, at which point they were told, in part, that "all of your

exemption requests have been denied" and that they needed to receive one of the vaccines by the

date of October 27th or they would be terminated.  When one employee asked about whether they

would still receive their yearly bonus, which was set to be paid out on October 29th, the Austal

spokesman said "if you don't get the vaccination by October 27th and you are obstinate or

difficult, then you won't get your bonus."  This Austal representative went on to say "if you're a

jerk or if you hurt this family, I'm taking it away from you."

32.     Then, in a further attempt to coerce all unvaccinated employees into getting the experimental vaccine, on October 26th, 2022, Austal sent out the following communication to all unvaccinated employees:

> "If you are not vaccinated by October 27th your termination will be processed effective at the conclusion of your shift on Wednesday, Oct. 27th.  Your termination status will reflect that your employment concluded in good standing caused by the vaccination mandate. You will be immediately eligible for rehire consideration if you satisfy the legal requirements for mandatory vaccination.  In addition, your bonus will not be impacted by your decision, if you meet the requirements to receive the bonus and are in good standing as of the conclusion of your shift on Wednesday, Oct. 27th, you will receive your bonus in your Friday, Oct. 29th paycheck."

In a last-ditch effort to coerce any remaining employees into taking one of the experimental vaccines, the communication went on to give another option of taking a two- day administrative leave to receive the Johnson and Johnson or Pfizer vaccine, citing that it was too late to receive the Moderna vaccine due to the prescribed amount of time that they had to wait between the first and second shots.

33.     The following day, all of the Plaintiffs reported to work as their job duties required, and at the end of their shift, their security badges were turned off.

34.     On March 30th, 2022 Austal USA retracted their vaccine policies when the Austal Senior Vice President of Operations sent out an email to all Austal employees announcing as follows: "effective Thursday, March 31st, 2022, Austal USA will be lifting the COVID-19 vaccination and testing requirements for all of our employees.  This will also include new hires, suppliers, subcontractors, and customers at all of our facilities."

12

E.     **Federal Law Prohibiting Religious Discrimination, Harassment, and Retaliation**

35.     Title VII of the Civil Rights Act of 1964 prohibits Austal from engaging in numerous forms of discrimination in virtually every employment circumstance.  Title VII provides in relevant part that:

> "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, <u>religion</u>, sex, or national origin. . ."

42 U.S.C. § 2000(e)-2 (emphasis added).  The word "religion" as used in the statute has been interpreted to "include all aspects of religious observe and practice, as well as belief, unless an employer demonstrates that they are unable to reasonably accommodate" to a person's religious observance or practice without placing an undue burden on the conduct of an employer's business. 42 U.S.C. § 2000e(j).    Additionally, if an employer "acts with the motive of avoiding accommodation this may violate Title VII even if they have no more than an unsubstantiated suspicion that accommodation would be needed." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.* 575 U.S. 768, 772 (2015).

36.     In other words, "an employer has a statutory obligation to make reasonable accommodations for the religious observances of its' employees, but is not required to incur undue hardship." *Weber v. Roadway Express*, 199 F.3d 270, 273 (5th Cir. 2000); *see also Dixon v. The Hallmark Cos.*, 627 F.3d 849, 855 (11th Cir. 2010) (holding that once "a prima facie case is established, the burden shifts to the employer to demonstrate that he is unable to reasonably

accommodate an employee's religious observance or practice without undue hardship on the conduct of the employer's business.")

### F.     Alabama State Law & Public Policy Doctrine

37.     Austal USA's termination of Plaintiffs is wrongful on the grounds that it was done in a discriminatory and retaliatory manner that directly conflicts with the purported public policy of the state of Alabama.  As discussed *infra*, the state of Alabama recognizes the "employment at-will doctrine," which means the employment contract is at the will of either party and may be terminated at any time for any reason by the employee or employer. *Alabama Mills, Inc. v. Smith*, 186 So. 699, 701 (Ala. 1939); *see also Salter v. Alfa Ins. Co.*, 561 So. 2d 1050, 1053 (Ala. 1990).

38.     However, Alabama is one of several states that recognize a "public policy" exception to the at-will employment doctrine. *Hoffman-LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 728 (Ala. 1987).  The public policy exemption provides that Alabama employers cannot fire workers for reasons that contradict state public policies.  Examples of such recognition of this principle is enumerated by Alabama's state public policy to prohibit employers from terminating an employee (a) who is presently seeking workers' compensation, (b) the employee's refusal to commit crimes at the direction of the employer, and (c) an employee who responds to a subpoena for jury duty. *See Jones v. Ethridge*, 497 So., 2d 1107, 1107 (Ala. 1986).

39.     While Alabama has not recognized the public policy exception to at-will employment in the past in a distinct context and has typically deferred to the legislature in the creation of private causes of action in these cases, *see Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So. 2d 428, 431 (Ala. 1995),  Plaintiff's termination from Austal based on their religious

14

and/or medical status is against the purported public policy of Alabama that has been made clear by the legislative and executive branches in recent years, which will be discussed further below.

40.     There have been many states that have passed laws, issued executive orders, or issued directives in response to the novel global health crisis brought about by COVID-19. Alabama is just one of many states that have enacted such protections by virtue of the legislative and executive branches.

41.     On January 21, 2021, Govern Kay Ivey issued the Twenty-second Supplemental Emergency Proclamation extending the statewide mask order until March 5, 2021.  The statewide mask order was then extended until April 9, 2021.

42.     On April 7, 2021, Governor Ivey issued the Twenty-sixth Supplemental Emergency Proclamation, which (a) rescinded the previous mask order and (b) institutes a "Safer Apart" health order that encourages individuals and employees to wear masks and maintain a six-foot distance from others.

43.     On May 3, 2021, Governor Ivey announced that the COVID-19 public health order would end May 31, 2021, and that the state of emergency for Alabama would end July 6, 2021.

44.     On May 24, 2021, Governor Ivey then signed Senate Bill 267 ("SB 267"), which prohibits government entities from issuing vaccine passports and requiring individuals to present proof of vaccination status to receive any government service or gain entry to a government building.

45.     On October 25, 2021, Governor Ivey issued Executive Order 724 ("EO 724"), which, *inter alia*:

- Requires state agencies to cooperate with the Alabama Attorney General's Office to challenge federal imposed COVID-19 vaccine requirements;

- Prohibits state agencies from penalizing a person or business for not complying with a federal vaccine requirement; and
- Prohibits a state entity from including in any state contract a provision imposing any duty or obligation on a party with respect to the vaccination status of the party or any of its officers, employees, or agents.

46.     On November 5, 2021, Governor Kay Ivey signed SB 9 (discussed *supra*), which requires employers with vaccine mandates to:

- Provide employees an opportunity and a form to request an exemption from the vaccine mandate based on religious or medical reasons;
- Liberally construe an employee's eligibility for an exemption in favor of the employee;
- Allow an employee to appeal any denial of exemption within seven calendar days after the denial;
- Not terminate an employee who has been denied an exemption for at least seven days after the denial or, if an appeal was filed, until a final ruling has been issued in the employer's favor.

47.     Given the extensive efforts undertaken by Alabama's legislature and executive branches to protect Alabama citizens from tyrannical suppression of fundamental rights by businesses and governmental entities, it is certainly apparent that Alabama has taken a strong position in favor of public policy that favors protections of its working citizens.

48.     The legislature has made clear that Alabama's working citizens should be afforded the same rights, privileges, liberties, and protections as those citizens who are employed by employers who have fifteen or more employees.  This is evidenced by the legislatures and executive branch's public outspoken comments on the matter as well as its enactment of protections to such individuals through SB 9, SB 267, and EO 724.  Moreover, these recent enactments establish Alabama's position that the protection of its citizens and their liberties is paramount.

49.     Accordingly, Plaintiff alleges that Defendants' termination of their employment is against the purported public policy of the state of Alabama.  Presently, there is an arbitrary distinction between Alabama working-citizens who are receiving protections on individual's fundamental rights to religious and medical grounds solely based on the size of their place of work as well as whether their place of employment happens to do business with the federal government.  Such distinction does not benefit the people of Alabama and results in inequitable and disparate treatment under the law.

50.     As such, Austal USA's termination of the Plaintiffs herein is averse to the purported public policy of the state of Alabama and is incongruent with applicable law.

### G.     Florida State Law and Public Policy Doctrine

51.     On November 18th, 2021 the Florida Legislature passed legislation that prohibits employers from requiring Covid-19 vaccination to employees as a requirement of their employment.  It laid out a list of five exemptions that must be accepted by employers, including "religious reasons, based on a sincerely held religious belief." This law enabled the state to fine violating employers in the amount up to $50,000 per violation for companies with over 100 employees and gave employees a right to sue said violating companies.

### H.     Plaintiff's Sincerely Held Religious Beliefs

52.     Plaintiffs assert that they possess sincerely held religious belief which made them unable to allow the injecting of a foreign experimental vaccine into their bodies based on the fact and/or their belief that the vaccines were derived by using aborted fetal tissue.

53.     The Supreme Court of the United States has long recognized that an employees' "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order

17

to merit legal protection." *Thomas v. Review Bd. Of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714

(1981); *see Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993);

*see also Offices of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp.2d 71, 81

(D.D.C. 2004) (noting that the law provides protection for "sincerely held religious beliefs," "not

just tenets of organized religion").

54.     Additionally, the Supreme Court has held that "if an individual deeply and sincerely

holds beliefs that are purely ethical or moral in source and content but that nevertheless impose

him a duty of conscience to refrain from participation . . . he qualifies for a [religious] exemption."

*Welsh v. U.S.*, 398 U.S. 333, 345 (1970).

55.     Moreover, the Supreme Court has stated that "local boards and courts . . . are not

free to reject beliefs because they consider them 'incomprehensible.' Their task is to decide

whether the beliefs professed by a registrant are sincerely held and whether they are, in his own

scheme of things, religious." *U.S. v. Seeger*, 380 U.S. 163, 185 (1965).

56.     Accordingly, Plaintiffs assert that as members of the Christian faith, they possess

sincerely held religious beliefs against receiving compulsory injections of any of the experimental

vaccines due to the fact and/or belief that the COVID-19 vaccines were manufactured using fetal

cell lines ("fetal tissue") from induced abortions, which is against their conscience, beliefs and

religion.

57.     The Plaintiffs assert that they do possess sincerely held religious beliefs that

required them to refuse to submit to Austal USA's policy mandating COVID-19 vaccines.

However, this hesitancy was summarily dismissed when Austal USA denied the Plaintiffs' valid

religious exemption requests and subsequently terminated them without regard to their religious

beliefs. Moreover, Austal failed to even provide an opportunity for Plaintiffs to engage in reasonable discussions concerning their hesitancy to receiving the one of the COVID-19 vaccines.

## COUNT I

### Violation of Title VII, 42 U.S.C § 2000e, *et seq*.

### Religious Discrimination–Failure to Provide Accommodations

58.　　Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

59.　　Plaintiffs contend that they are entitled to their fundamental right to exercise their religion of choice afforded to them under the <u>First Amendment of the United States Constitution</u>. Furthermore, Plaintiffs are members of a protected class, both of which being devout members of the <u>Christian faith</u>.

60.　　As such, Plaintiffs hold sincere religious beliefs that preclude them from receiving any of the experimental COVID-19 vaccines.

61.　　Plaintiffs informed Austal USA of their sincerely held religious beliefs and requested religious exemptions from the vaccine mandate.

62.　　During the course of Plaintiffs' employment with Austal USA and since the announcement of Austal's COVID-19 mandate, Plaintiffs were subjected to a discriminatory, hostile, and offensive work environment because of their religious beliefs.  This discriminatory, hostile, and offensive work environment included, but was not limited to:

#1- Disparaging and unfavorable treatment by employees, supervisors, managers, and agents of Austal USA as compared to similarly situated employees who received one of the three experimental vaccines.

19

#2- Being terminated for not receiving one of the three experimental vaccines, all of which have proven to have a vast array of serious side effects and have caused an increasing number of deaths.

63.     Austal USA refused to engage in a meaningful interactive process with Plaintiffs regarding their religious accommodation requests and, instead only responded to Plaintiffs with questions designed to challenge the sincerity of their religious beliefs.

64.     Austal USA failed to provide Plaintiffs with reasonable accommodations for their religious beliefs, instead advising Plaintiffs that they would be deemed to have "voluntarily resigned" if they did not submit to injecting an experimental COVID-19 vaccine into their bodies by October 27th, 2021.

65.     Through Defendants actions, policies, employment practices, and conduct directed at Plaintiffs' religious faith, in addition to failing to engage in the interactive process or offer any reasonable accommodations, Austal USA deprived the Plaintiffs of their constitutional right to protection under law in violation of Title VII of the Civil Rights Act of 1964.  Moreover, this deprivation was done intentionally, purposefully, and willfully.

## VII.   PRESERVING EVIDENCE

66.     Plaintiffs hereby request and demand that the Defendant preserves and maintains all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance or security tapes or information, business or medical records, incident reports, periodic reports, financial statements, bills, telephone call slips or records, estimates,

invoices, checks, measurements, correspondence, facsimiles, email, voicemail, text messages, or any other evidence involving the incident in question, and any electronic images or information related to the referenced incident or damages.  Failure to maintain such items will constitute "spoliation" of the evidence.

## VIII.   DISCOVERY REQUESTS

67.     Pursuant to Rule 26 et seq. of the Federal Rules of Civil Procedure, the Plaintiffs hereby request Austal USA to disclose the information or material described and authorized for disclosure in accordance with the Federal Rules of Civil Procedure.  Defendants must comply with the requirements of Rules pertaining to the discovery of information as dictated by the Federal Rules of Civil Procedures.

## IX.   PRAYER FOR RELIEF

68.     WHEREFORE, PREMISES CONSIDERED, the named Plaintiffs on behalf of themselves and the class members whom they seek to represent request the following relief:

a)  Acceptance of jurisdiction of this cause;

b)  A declaratory judgment that Austal USA has violated Title VII of the Civil Rights Act of 1964 by failing to engage in the interactive process in response to requests for accommodations to its COVID-19 vaccine mandate;

c)  A declaratory judgment that Austal USA has violated Title VII of the Civil Rights Act of 1964 by failing to provide reasonable accommodations to its COVID-19 vaccine mandate;

d)  A declaratory judgment that Austal USA's termination is in violation of Florida state public policy;

e)   A temporary and permanent injunction against Defendant and its partners officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, religious discrimination, and retaliation by such Defendant set forth herein;

f)   An Order requiring Defendant to initiate and implement programs that provide (i) equal employment opportunities for all employees, regardless of their religious affiliation or medical status; (ii) remedy the effect of Defendant's past and present unlawful employment practices; and eliminate the continuing effects of the discriminatory and retaliatory practices described above;

g)   An Order requiring Defendant to initiate and implement systems of assigning, training, transferring, compensating, and promoting employees on religious and other constitutionally recognized rights in a non-discriminatory manner;

h)   An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in this section, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (h) and (i).

i)   An award of back pay; front pay; lost job benefits; preferential rights to jobs, and other equitable relief for Plaintiffs;

j)   An award of nominal, compensatory, and punitive damages for all legal relief sought in this complaint;

k)   An award of litigation costs and expenses, including reasonable attorney's fees to the Plaintiffs;

l)   Prejudgment interest;

m) Such other, further and different relief as the Court may deem just and proper; and

n)  Pursuant to Federal Rules of Civil Procedure 38, Plaintiff demands a jury trial on all issues upon which there is a federal right to a jury trial.


Richard Allen

Plaintiff

Jeremy Guy

Plaintiff


## **VERIFICATION**

I, BRIAN A. DASINGER, am over the age of eighteen years and counsel for all Plaintiff in this action. The statements and allegations included in the foregoing Complaint are based upon reports and information known to me, provided to me by the Plaintiffs, and/or furnished to me and that I declare under penalty of perjury that everything represented herein is true to the best of my knowledge, information, and belief.  Dated this 5th day of July, 2022.


Respectfully Submitted,


Brian A. Dasinger (DAS003)
Brian A. Dasinger, P.C.
22811 U.S. Hwy 98
Suite 3
Fairhope, Alabama 36532
251-928-5588
bdasingerpc@gmail.com
Attorney for Plaintiffs